UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSEPH HERO, <br><br> Plaintiff, <br><br> v. <br><br> LAKE COUNTY ELECTION BOARD, <br><br> Defendant. | CAUSE NO. 2:19-cv-319 DRL |

OPINION & ORDER

A longstanding Republican, Joseph Hero for years voted in the Republican primary elections and ran for office as a Republican candidate until 2015 when he supported two independent candidates for local office in St. John, Indiana. A year later, the Indiana Republican Party barred his membership for a decade—which, according to the party's state chairperson, made him ineligible for elected office as a Republican in Indiana.

In 2019, Mr. Hero tried to run in the Republican primary for town council in St. John. The Lake County Election Board removed him from the ballot because of the ten-year ban. He says the board violated his First and Fourteenth Amendment rights. Today, he seeks a declaratory judgment and permanent injunction to allow his future candidacy, but not damages. He says he hopes to run (likely in 2023) for office as a Republican but fears the board will once more disallow his candidacy. Both sides filed summary judgment motions. The court dismisses the case for want of standing.

BACKGROUND

The relevant facts aren't in dispute. Mr. Hero resides in St. John, Indiana. He has been a member of the Republican Party for more than forty years and has voted as a Republican in every primary election since the 1980s. So devoted to the Republican Party, he has held many party positions, including serving as an elected delegate to the Republican State Convention numerous times, precinct

committeeman in St. John for over 30 years, and town chairman for the St. John Republican Party for approximately 25 years. He ran for certain offices as a Republican but lost in the general elections.

In 2015, a debate ensued over St. John's use of eminent domain to take several private residences for commercial development. Certain residents formed a local political action committee to support two independent candidates who shared the concern that the exercise of eminent domain authority was disproportionally affecting lower-income homeowners and undercompensating them for their property. Mr. Hero helped the political action committee and two independent candidates. He gave legal advice, put up yard signs, and vocally supported their candidacy. Never before in forty years had he supported another party's candidate against a Republican candidate.

The next year, Mr. Hero sought to be reelected as St. John Republican Precinct Committeeman and to serve as a delegate to the Republican State Convention. He won both in May 2016. In a letter sent by the Indiana Republican Party Chairman, Mr. Hero was notified he was not in good standing because he committed "gross misconduct" and broke party rules by supporting the two independent candidates and the related political action committee. He was deemed ineligible to serve as precinct committeeman or party delegate. The Republican Party imposed a ten-year ban on seeking office.

In the 2018 and 2020 elections, Mr. Hero continued to vote in the Republican primary. In 2019, he filed a "declaration of candidacy" to run for a seat on the St. John Town Council as a Republican. He complied with the statutory requirements under Indiana law to declare his candidacy, including the requirement that he vote for the political party he was claiming affiliation with in the most recent primary election.

The party chairman and a council member in Lake County filed formal challenges to Mr. Hero's candidacy. The Lake County Election Board held a hearing. Mr. Hero demonstrated that he met all requirements under Indiana law. He provided a letter in support from an attorney for the

Indiana Election Division.[1] In response, everyone seemed to concede that Mr. Hero met the statutory requirements to run for office. The board nonetheless recognized the state party chairman's ten-year ban as authoritative. The board voted to remove him from the ballot.

Mr. Hero brought this action under 42 U.S.C. § 1983 alleging a deprivation of his First and Fourteenth Amendment rights. He seeks a declaratory judgment and permanent injunction that would permit him to seek election as a member of the Republican Party at some point in the future, provided he once more meets the requirements of Indiana Code § 3-8-2-7.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Comty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020). With crossmotions for summary judgment, each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to

---

[1] The defense moves to strike this letter as hearsay, but not the fact a letter was sent.

decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

First Amendment rights to vote, to associate in parties to advance certain beliefs, and to access the ballot "rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968). Few rights are more fundamental to the Framers' vision of a healthy and functioning constitutional democracy. Political parties may self-define and regulate membership to be sure, *see N.Y State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 202 (2008), but primary elections should not be "hostile to intraparty feuds" as they are an "ideal forum in which to resolve them," *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 227 (1989). A primary election's purpose is "to assure that intraparty competition is resolved in a democratic fashion." *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (citing *American Party of Tex. v. White*, 415 U.S. 767, 781 (1974)).

The First Amendment enshrines "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"—something that isn't served when election campaigns are "monopolized by the existing political parties," *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964)), or unilaterally by existing political party leaders. The board's decision here seemed to exalt political party preference over the will of Indiana's General Assembly—a legislative decision that must be considered reverently when free and fair elections and other precious freedoms prove at stake.

But before considering the motions, the court must ensure its jurisdiction. *See Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017); *see, e.g., Lowrey v. Tilden*, 948 F.3d 759, 760 (7th Cir. 2020) (court must "take[] jurisdictional issues seriously" and analyze each new filing as a "jurisdictional hawk"). The United States Constitution

4

confines the federal judiciary's power to "Cases" and "Controversies." U.S. Const. art. III § 2. For a case or controversy to exist, a plaintiff must have standing—an injury, fairly traceable to the defendant's conduct, that the court's decision will likely redress. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The injury must be concrete and particularized, and actual or imminent rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In the context of the Declaratory Judgment Act, these same standing principles find their home. District courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). The phrase "case of actual controversy" within the Declaratory Judgment Act refers to the types of cases or controversies that are justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Disputes must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and they must be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna Life*, 300 U.S. at 240-41). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Mr. Hero says he was injured because of what he believes was a violation of his First and Fourteenth Amendment constitutional rights by the election board, but "[p]ast exposure to illegal

5

conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). He doesn't seek any damages for what happened before. He seeks injunctive relief, not compensatory damages, in the event that he seeks election, qualifies by statute, and the election board (however then constituted by its board members in the future) decides to do the same thing it did in 2019. The alleged injury isn't particularized, real, or immediate. "[T]hreatened injury must be certainly impending to constitute injury in fact," and "[a]llegations of possible future injury" aren't sufficient. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

The 2019 election has been held and decided. There are no "continuing, present adverse effects" of the past illegal conduct, and no substantial and present controversy given the eye toward the next primary election—at least none that Mr. Hero demonstrates with evidence to meet the injury requirement of constitutional standing. *See Lyons*, 461 U.S. at 102. His speculation that he may suffer the same injury at some time in the future is insufficient to establish standing. *See id.* at 105. He relies on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013), or "several contingencies," *Tobin for Governor v. Ill Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001).

In *Tobin*, for instance, this circuit agreed a candidate could not demonstrate constitutional standing—a "realistic threat" of future harm—because "several contingencies" would have to occur first: the candidate would need to decide to run for office, the candidate would need to collect over 25,000 sufficient signatures, the election board would have to make the same decision, and the election board would have to make the same procedural mistake. *Id.* at 527-28. A similar list of contingencies must occur in Mr. Hero's case for any future harm to occur: he must run for office, he must vote in the most recent primary election, he must meet all other statutory requirements, his candidacy must

6

be challenged, and the election board must once again vote to remove him from the ballot.[2] The election board has changed since Mr. Hero's hearing in 2019 and may change once again before Mr. Hero files his declaration of candidacy. The court can only speculate whether future compositions of the election board will similarly decide that a political party decision is more authoritative than Indiana law, as duly enacted by the Legislature.

"[S]ome day intentions—without any description of concrete plans" or "specification of when the some day will be"—don't constitute actual or imminent injury. *Lujan*, 504 U.S. at 564. Distinguishable from "some day intentions" are "conditional statements" of intent to engage in conduct solely but for the ongoing illegal conduct. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183-84 (2000) (individuals who had previously used the river conditionally said they would use the river for recreation but for the illegal pollution); *Scherr v. Marriot, Int'l* 703 F.3d 1069, 1074-75 (7th Cir. 2013) (plaintiff alleging future harm of an ADA violation established an injury-in-fact because she previously had been injured by the hotel's violation and said she would use the hotel but for the alleged ADA violation).

Mr. Hero might like to characterize his intention to run in 2023 as a "conditional statement" and more than a "some day intention" but that is too attenuated today. Per Indiana law, primary candidates must wait until 118 days before the primary election to declare their candidacy. *See* Ind. Code § 3-8-2-4. It seems then he cannot legally file a declaration of candidacy for St. John Town Council until approximately January 2023. Quite contrary to those who would use the river or hotel the next day if permitted, Mr. Hero is not currently suffering from any "continuing, present adverse effects" of his past injury or facing imminent future harm. Indeed, he has many avenues for relief in the future: he could return promptly to this court to obtain a preliminary injunction should the election

---

[2] The relevant portion of the Indiana Code was amended effective January 1, 2022 to require an individual to vote for the political party they seek to claim affiliation during the two most recent primary elections. *See* Ind. Code § 3-8-2-7.

board disallow his candidacy at the expense of Indiana law and his constitutional rights, *see* Fed. R. Civ. P. 65; *see also Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2011) (violation of constitutional right is irreparable injury), or he could seek prompt judicial review of the election board's decision by the Lake County Superior Court, *see* Ind. Code § 3-6-5-34. He is not without a remedy in the future, but he lacks standing today.

## CONCLUSION

Because this federal court cannot proceed without jurisdiction, the court DISMISSES this case for want of jurisdiction, DECLINES a declaratory judgment, and DENIES AS MOOT the summary judgment motions and the motion to strike [ECF 29, 31, 39]. This order terminates the case.

SO ORDERED.

September 21, 2021                                  *s/ Damon R. Leichty*
                                                    Judge, United States District Court